192 So. 288

**SCOTT et al. v. STATE.**

**8 Div. 921.**

Court of Appeals of Alabama.

Nov. 21, 1939.

Wm. L. Chenault, of Russellville, for appellants.

Thos. S. Lawson, Atty. Gen., and Francis M. Kohn, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The two appellants, defendants below, father and son, were indicted by the grand jury at the November 1938 term of the circuit court of Franklin County, charged

with the offense of petit larceny; specifically, that they feloniously took and carried away 15 bushels of corn of the aggregate value of $7.50 the personal property of T. G. Vernon, etc. As the law requires (Local Acts 1923, p. 272), said indictment was transferred to the Law and Equity Court of said county, in which court the defendants were put to trial at the February 1939 term thereof, where the case was tried before the judge of said county sitting without a jury. The trial resulted in the conviction of both defendants and separate judgments of conviction were pronounced and entered. The record proper in this case appears regular in all respects. However, no insistence to the contrary is presented.

In this case, the evidence is without dispute that appellant R. J. Scott, at the instance of his father, appellant Arthur R. Scott, on the day in question, went upon the land cultivated by State witness Will Nichols as a tenant, and loaded into the wagon several bushels of corn which had been pulled and placed into piles by Nichols, and carried said corn away, as he was told to do by his father. The alleged injured party, Vernon, claimed said corn as rent due to him by Nichols, and likewise, appellant R. J. Scott, insisted that he had a deed to the land upon which the corn was grown, and that said corn was his as rent on the land.

The material evidence in this case is without conflict, and the insistence of error here presented, and relied upon for a reversal is, that in applying the law applicable to the case as disclosed by this evidence, the court fell into error, the appellant insisting that under the whole evidence he was legally entitled to an acquittal.

There is a marked distinction between a mere civil trespass and the crime of larceny. If a person, in good faith, takes the property of another, believing it to be legally his own, or that he has a legal right to its possession, he is not guilty of larceny, although his claim is based on a misconception of the law or his rights under the law, for although ignorance of the law and honest intentions cannot shield a person from civil liability for a trespass committed by him, yet they do protect him from criminal liability, by divesting the act of the *felonious intent,* without which it cannot be a crime. Knowledge of the existence of an adverse claim by another person does not negative the existence of good faith. 36 Corpus Juris, p. 764; Morning-

star v. State, 55 Ala. 148; Ludlum v. State, 13 Ala.App. 278, 282, 69 So. 255.

To refute the insistence that the asportation of the corn was in any manner felonious, appellants call the court's attention to the following facts, among others, disclosed by the record:

(1) That appellant Arthur R. Scott had a warranty deed to the land upon which, and at the time, the corn in question was grown.

(2) That same appellant, a day or two before the alleged taking of the corn, notified State witness Will Nichols, the principal State witness, and the person who raised the corn in question, he (Scott) expected rent and would send for the corn on the following Tuesday. Said Nichols testified among other things: "I know he (Scott) was claiming the land all right." "He told me he was expecting rent." And in answer to the question, "Did Mr. Arthur Scott ever tell you he was going to move any of that corn?" the witness (Nichols) replied: "Yes, he told me he was going to send his team down on Tuesday morning, and his team was down there the next day, which was Tuesday." Nichols also testified that when the wagon arrived the team was being driven by appellant R. J. Scott, and that two other hands were in the wagon with R. J. to help load the corn. The record shows the following, upon the direct examination of Will Nichols by the State:

"Q. You know Arthur R. Scott? A. Yes sir.

"Q. You know his son R. J. Scott? A. Yes sir.

"Q. Did they or either one come over back in the fall and get some of that corn? A. Yes sir.

"Q. Who came? A. R. J. came.

"Q. Is he the son of Arthur Scott? A. Yes sir.

"Q. Does he live with Arthur? A. Yes sir.

"Q. Whose team was he driving when he came? A. Drove Mr. Arthur's team.

"Q. You know the team when you see it? A. Yes sir.

"Q. They drove through your field and got the corn? A. Yes sir, drove right on down through the field.

"Q. You have a conversation with R. J. in the field? A. Yes, he asked which way I had been going down through there and I told him.

"Q. He went in the same way you went? A. Yes sir.

"Q. Did he ask you about where this disputed line was to this land? A. He asked where the stake was there in the field, and I told him right there."

(3) The records shows that at the time of the foregoing conversation Will Nichols, his daughter and a Mrs. Feltman, were engaged in hauling corn from the same field.

(4) That T. G. Vernon, the alleged injured party, testified he saw Arthur Scott's wagon in the field, on the day in question, and that they were loading the corn in the wagon. That he was some distance away. That he did not go to them, or say anything to them.

(5) It conclusively appears from the record that appellant Arthur Scott consulted an attorney, a respectable lawyer practicing at the bar of the court, where this case was tried, and who at the time was representing the defendants upon this trial, before making any attempt to get the corn he claimed due to him as rent. In this connection the record shows the following, among other things of like import, towit:

"Q. Your name is Arthur Scott? A. Yes sir.

"Q. R. J. Scott is your son? A. Yes sir.

"Q. This deed that was introduced in evidence is dated April 6, 1938, that is the deed you got when you bought the land from J. C. Williams? A. That is right.

"Q. Is that the land this corn was gotten off? A. Yes sir.

"Q. You did get a deed made? A. That is right.

"Q. What did Will Nichols say to you about working it after you bought it? A. He asked if it would be all right for him to work it and I told him as far as my part it was all right.

"Q. How long after had the deed been made? A. It was that very day. I come back and he left his plowing. I called him over and I says 'Is this the way you said have the deed made' and he looked at it and he says 'that is right.'

"Q. That is the time he talked about making a crop with you? A. Yes sir.

"Q. And paying you rent on the land? A. Yes sir.

"Q. What was said over there that Sunday when he came to your house with Lu-ther Holland? A. He called me off, there was a bunch sitting talking and he said 'Let's go to the barn' and he says 'I thought I would tell you I am going to gather a little patch, that is bad to overflow.'

"Q. That was down on the disputed tract in the bottom field? A. Yes, he says 'I told my wife I was coming to tell you. I told Mr. Vernon yesterday.'

"Q. He said he told Mr. Vernon yesterday he was going to gather? A. He says, 'I told my wife I aim to tell you, and the rent would be for whichever one of you gets there first and gets the corn.' Well, I says 'I am not coming to get the corn until I talk to my lawyer,' and I asked him 'When will you have the corn ready?' and he says 'I will have it ready Tuesday by nine or ten o'clock.' I says, 'I will not come until I see what my lawyer says.'

"Q. After you saw him and talked to him, you came to Russellville to see me about it? A. Yes sir.

"Q. Had you through Mr. Frank Long furnished me an abstract of the land? A. Yes sir.

"Q. After going over that abstract, what it showed, what did I tell you?

"Q. What did I tell you? A. You told me to go and get my rent.

"Q. You send your wagon over the time he said? A. I didn't go myself. I sent my wagon.

"Q. Did they get the corn? A. They got somewhere between 6 and 8 bushels.

"Q. That is all the rent you got off the place? A. We had done notified him time and again we wanted the rent.

"Q. You had the deed to the land and had it at the time you went after the rent, you had the deed in your possession? A. I had an abstract to it.

"Q. And you went after it under the instructions of your attorney? A. That is right."

From the foregoing, and other evidence of like import contained in the record, we are clear to the conclusion that the evidence adduced upon the trial of this case is wholly insufficient to raise a reasonable presumption that the defendants were guilty of larceny. The evidence had no element of secrecy or furtiveness, such as usually characterizes the crime of theft. Nor was there any denial that the defend-

ants loaded several bushels of corn and carried it to their home. It affirmatively appears that the taking of the corn was openly done in the day time, in the presence, not only of the tenant (Nichols), who had raised it, but also in the presence of several other persons, including Mr. Vernon, the alleged injured party, as hereinabove stated. There was a want of all evidence tending to show that the specified corn was fraudulently or feloniously taken from the possession of the owner. The lower court was in error in holding otherwise.

■ There appear other errors in the rulings upon admission of certain evidence over the objection and exception of the defendants. We refrain from discussing in details the points of decision thus referred to as being unnecessary. What we have said is conclusive of this appeal and of this prosecution. In appeals of this character this court is under the duty to review the rulings and finding of the lower court without any favorable presumption, either as to the law, or conclusions on the evidence, and if there be error, we are likewise charged with the duty to rendered here such judgment in the case as the court below should have rendered. Section 8599, Code 1923. Therefore, conforming to the requirements of the Statute, supra, an order is here entered reversing the judgment of conviction from which this appeal was taken. We further render this order discharging these two appellants from further custody in this proceeding, as the trial court should have done.

Reversed and rendered.