163 So.2d 220

**Early Lee GASKIN**

v.

**STATE.**

**I Div. 963.**

Court of Appeals of Alabama.

April 7, 1964.

Kenneth Cooper, Bay Minette, for appellant.

Richmond M. Flowers, Atty. Gen., and W. Mark Anderson, III, Asst. Atty. Gen., for the State.

CATES, Judge.

The indictment was for larceny from a storehouse. The evidence showed the defendant shoplifted a pair of men's trousers valued at $7.95, "the personal property of Gulf Mills Inc., a corporation." Code 1940, T. 14, § 331, classes this as grand larceny..

The verdict and judgment were of guilt and sentence was for five years imprisonment.

The manager of Gulf Mills Department Store, Fairhope, identified the trousers found in defendant's possession as the property of the store, a corporation. He had seen the defendant in the store "on the morning before he was picked up by the police."

An accomplice's testimony supplied proof of the corpus delicti and the defendant's agency. A policeman found the trousers in the defendant's possession. He had arrested him for driving his car through a stop sign.

The defendant made a confession—shown to be without improper inducement—of taking a pair of trousers at the store and putting them under his coat.

In appellant's brief we find:

" * * * In the instant case the indictment alleged the pants were the property of Gulf Mills Inc., a Corporation. However, Frank Gopher, manager of Gulf Mills Department Store, testified on voir dire that he did not know whether the name they were operating under, Greens', was incorporated or not. And he further stated he did not know whether the store was owned by Gulf Mills Inc., or not.

" * * * In this case the State charged the defendant with feloniously taking and carrying away, *from a storehouse,* (italics added) one pair of men's trousers of the value of $7.95, the personal property of Gulf Mills Inc., a Corporation. The definition of a 'storehouse' is defined in Black's Law Dictionary, Third Edition, as 'a building for the storage of goods, grains, foodstuffs, etc.,' In the case of Jefferson Vs. State [100 Ala. 59, 14 So. 627], Chief Justice Stone defined a 'storehouse' as 'a house in which things are stored; a building for the storage of grain, foodstuffs, or goods of any kind;

a magazine; a respository; a warehouse; a store.' In the present case there was no allegation by the State in its indictment that the pants were kept in any kind of a building where they were 'for use, sale or deposit'; instead, one reads the indictment to mean a place of respository—not of sale. * * *

* * * * * *

" * * * There was no showing as to who actually owned the pants. One witness said they came from the store he managed, but he did not prove it was owned by Gulf Mills, and that Gulf Mills was incorporated. The State's principal witness also admitted that the pants could have come from one of the stores in Mobile, instead of where he worked—in Fairhope."

The Attorney General quotes in brief from the testimony of the store manager:

"Q. These pants came from your store?

"A. Yes sir.

"Q. What is the value of them?

"A. $7.95.

"Q. To whom do they belong?

"A. Gulf Mills Discount Department Store.

"Q. That is a Corporation?

"A. Yes sir."

The indictment laid the property in "Gulf Mills Inc., a corporation." The record hints that after the theft there was a change in ownership and name of the store.

The question of "storehouse" vs. "shop" was also brought up in Gaskin v. State, ante p. 290, 161 So.2d 503. To sell goods over the counter requires some stock to be stored in the place of sale.

■ The purpose of alleging (and proving) ownership of stolen goods is twofold: (a) to obviate consent by the rightful owner

to the asportation; and (b) to identify the particular occasion to prevent double jeopardy.

 Clearly, the store held itself out by the trade name of "Gulf Mills Department (or Discount Department) Store." But "Gulf Mills Inc., a corporation" was the allegation.

In Savage v. State, 23 Ala.App. 372, 125 So. 790, Bricken, P. J., wrote:

"* * * The indictment * * * alleged that the property in question, to wit, 50 pairs of stockings, was the personal property of the *Railway Express Agency, Incorporated.* Upon the trial the only evidence adduced as to the ownership of the property was that it belonged to or was the property of the Railway Express Company. Thus it appears that a fatal variance in these allegations, and the proof offered in support thereof, is clearly apparent, for by no intendment or construction could it be said that the name *Railway Express Agency, Incorporated,* as stated in the indictment, is the same as *Railway Express Company,* as shown by the only proof offered upon the trial. This manifest and patent variance in the *allegata* and *probata* entitled the defendant to the general affirmative charge, which was requested in writing by the defendant and refused."

The trial judge ruled on the variance first, in denying the defendant's motion to exclude made at the close of the State's case in chief, one ground of which clearly called the difference to the court's attention. Secondly, the point was made ground 7 of the motion for new trial. This motion was denied.

` Corporate names are prolific and often title is in one entity and possession in another, both with similar names. A defendant no matter how guilty of one offense should not be put to the risk of being whipsawed in multiple prosecutions for the same transaction. This is all the more cogent

under our short form indictment and no provision for a bill of particulars.

"* * * When the indictment alleges the property to be owned by one party and the evidence proves the owner to be another party, there is a fatal variance between the allegations and proof."—Clonts v. State, ante p. 287, 161 So.2d 155.

The judgment of the court below is reversed and the cause remanded for new trial.

Reversed and remanded.