288 So.2d 175

**Stephen M. WHITE**

v.

**STATE.**

**3 Div. 225.**

Court of Criminal Appeals of Alabama.

Jan. 2, 1974.

William R. Gordon and Calvin M. Whitesell, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted of grand larceny and sentenced to a term of three years in the penitentiary. At arraignment, attended by counsel of his choice, he interposed a plea of not guilty. New counsel represents him on this appeal.

On November 11, 1972, appellant was employed as manager of Brewton Auto Sales, a used car business in Brewton, Alabama, which was owned by his father, N. C. White. This date fell on Saturday when the banking and other financial institutions were closed.

On the above date one Joe Watkins came to the Brewton Auto Sales for the purpose of trading his 1967 Mercury Comet automobile for a 1968 Ford Custom 500 automobile. Negotiations for the trade and sale were first had between Watkins and appellant, and Watkins said he had rather talk with appellant's father as he had previously done business with him. Watkins talked with appellant's father and they agreed on the price of the Ford and the amount to be allowed on the trade-in.

The difference between the agreed price of the Ford and the agreed price of the Comet, including tax, was $612.00. A sales invoice reflecting this agreement was signed by Watkins and appellant. Watkins used the mark "X" in signing the invoice. The invoice contained an express clause to the effect that it was understood and agreed that the title of ownership to the car was not to pass until the final cash payment was made. According to the parties, the balance of the purchase price was to be financed. Watkins said he understood the balance due on the Ford was $612.00 and that the installment payments would be around $40.00 to $50.00 per month. There is a conflict in the evidence as to who was to arrange the financing. Watkins said he understood that appellant's father was to arrange the financing with a bank in Brewton and that if he was unable to do so he was to contact Watkins who would then attempt financial arrangements with a credit company. Appellant and his father testified they permitted Watkins to take the Ford car home for the weekend with the understanding that he would be back the following Monday and work out his own financial arrangements with some credit company. Appellant's father had done business with Watkins before and knew his credit was good. If Watkins was not successful in arranging his own financing with a credit company he was to secure a policy of insurance on the car and appellant's father would go with him to the bank and co-sign the necessary papers to secure the balance due on the Ford. Watkins did not return on Monday to close the transaction. The elderly White said he tried to contact Watkins on Wednesday following the Monday he was supposed to return but was not successful, and he tried again the following week without success.

Some two to three weeks after November 11, the elderly White and his wife, appellant and his wife, appellant's brother, his wife and baby had supper at the home of the senior White. They had lived in Brewton and Flomaton about a year but had never been to the town of Castleberry. They had heard that since the construction of Interstate 65, Castleberry had become a ghost town and they decided to go and see for themselves. After riding around Castleberry for about thirty minutes, appellant said that Joe Watkins had never come back to complete the car deal and they should go and pick up the car. Watkins lived in the Belleville community near Castleberry. They drove to Watkins' home. Appellant and his father walked up on the porch and the elderly White knocked on the door and called to Watkins, who came to the door. Appellant's father told Watkins he wanted the keys to the car. Watkins went back into the house and returned with the keys and five twenty-dollar bills. He tried to

give the money to appellant's father who refused to take it, saying that the car was not insured and he wanted the keys. Watkins gave appellant's father the keys and said he wanted to get some personal things out of the car and they all walked out to the car. Watkins got his personal belongings out of the car and appellant's father told him they were going to put the car back on the lot and that when he brought the $612.00 he could take the car or he could forget the $612.00 and just come by the car lot and pick up the trade-in. Appellant drove the car from Watkins' house. Watkins told them he would be there in a few days to see about the car.

Watkins testified that he saw a pistol around the elderly White's waist and that he (Watkins) said something about the law and the elderly White said he had the law with him. Watkins said the pistol made him give up the keys, but he testified that the pistol was never drawn, was never in the hands of appellant's father, and he was not threatened in any manner to surrender the car keys. It is undisputed by every witness on both sides of the case that no threats were made. Watkins claimed they came to his house after eleven o'clock while appellant and his witnesses fixed the time between 9:30 and 10:00 p. m.

On two occasions after the car was repossessed, Watkins' wife went to the Brewton Auto Sales to check on the car. Each time she was told to bring six hundred and twelve dollars and they could get the car.

Watkins never did carry the cash money to pay the balance and never attempted to have the car financed. As a matter of fact he never went back to check on the Ford automobile and never went back to pick up his Comet.

In the light of all of the above facts and circumstances, appellant was indicted for grand larceny and subsequently convicted.

There is little doubt that appellant committed a civil wrong giving rise to a common law, and statutory, action for dam-ages, but a conviction for grand larceny cannot stand. To sustain such a conviction would be a miscarriage of justice.

The following are some well-settled principles of law to guide us to the conclusion we have reached:

"Larceny is the (1) felonious taking and (2) carrying away of (3) personalty of (4) another (5) with intent to (a) convert it or (b) deprive the owner thereof * * *." Livingston v. State, 44 Ala. App. 559, 216 So.2d 731.

■ In all criminal prosecutions there must be substantial evidence tending to prove all elements of the offense charged. Livingston v. State, supra; Ex parte Grimmett, 228 Ala. 1, 152 So. 263.

■ The purpose of alleging and proving ownership of stolen goods is two-fold: (a) to obviate consent by the rightful owner to asportation, and (b) to identify the particular occasion to prevent double jeopardy. Gaskin v. State, 42 Ala.App. 310, 163 So.2d 220.

■ Ownership of goods or chattels implies both title and possession. Murchinson v. State, 30 Ala.App. 15, 199 So. 897.

■ An instrument showing a sale and delivery of chattels under which title is to remain in seller's name, until purchase price is paid, without more, evidences a conditional sale. Perkins v. Skates, 220 Ala. 216, 124 So. 514.

In Davidson v. Commonwealth, 219 Ky. 251, 292 S.W. 754, the Court of Appeals of Kentucky said, "It is an essential element of the crime of larceny that the property should be taken from the possession of the owner without his consent. To take property from the possession of one with his consent, from the nature of things, cannot be larceny." There was direct consent from Watkins that the automobile be removed from his house. He gave the keys to appellant's father saying he would come in a few days later to see about the car.

50 Am.Jur.2d Criminal Law, Section 141, page 210, Note 7.

In Scott v. State, 29 Ala.App. 110, 192 So. 288, Bricken, Presiding Judge, said:

"There is a marked distinction between a mere civil trespass and the crime of larceny. If a person, in good faith, takes the property of another, believing it to be legally his own, or that he has a legal right to its possession, he is not guilty of larceny, although his claim is based on a misconception of the law or his rights under the law, for although ignorance of the law and honest intentions cannot shield a person from civil liability for a trespass committed by him, yet they do protect him from criminal liability, by divesting the act of the *felonious intent,* without which it cannot be a crime. * * *"

A like conclusion was reached in Brand v. State, 26 Ala.App. 286, 158 So. 769.

In 52A C.J.S. Larceny § 13, page 436, we find this principle of law expressed this way: "It is not larceny for a person to take his own goods from one who has no legal right to withhold them from him, even though he commits a trespass in taking them."

■ Appellant's possession of the Ford automobile was conditional: to keep it over the weekend and for Watkins to come back the following Monday with the cash balance of $612.00, arrange his own financing with a commercial credit company, or secure a policy of insurance and appellant's father would go with him to the bank and get the car financed. Watkins breached his conditional possession of the Ford in every respect and continued to drive an uninsured automobile at will. He fully realized his default and derelictions and tried to pay appellant's father $100.00. Appellant's father refused to accept the money, telling Watkins the car was not insured and would be on the lot for him when he was ready to complete the sale and purchase.

As we have pointed out, the "taking" in this case was open and in the presence of the prosecutor, his wife and son, and several others were also present. It had no element of secrecy or furtiveness, such as usually characterizes the crime of theft, nor was there any subsequent attempt to conceal the property taken. At the time the keys were surrendered, Watkins was told the car would be placed on the lot until he came in to complete the sale and purchase transaction. This action on the part of appellant is expressly authorized by the Uniform Commercial Code which provides that "unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. * * *" Title 7A, Section 9–503, Code of Alabama 1940.

Title 15, Section 389, Code of Alabama 1940, requires us to search the record for errors and to render such judgment as the law demands. We hold, under the evidence in this case, the trial court should have granted appellant's motion to exclude the state's evidence. Therefore, an order is here entered reversing the judgment of conviction from which this appeal was taken.

Reversed and remanded.

ALMON, TYSON and DeCARLO, JJ., concur.

CATES, P. J., dissents.

CATES, Presiding Judge (dissenting).

The only ruling had of the trial judge as to the State's making a prima facie case was on a motion to exclude the State's evidence. The motion was denied.

There were no exceptions taken to the oral charge. The defense tendered no written charges. Hence, the oral charge became the law of the case.

As I understand the majority opinion, it holds that the State failed to sustain the burden of negativing a bona fide claim of right on the part of the defendant.

A "claim of right" believed in good faith negatives the felonious intent when the accused has undisputedly taken property. Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288; 50 Am.Jur.2d Larceny, § 41. The State has the burden to dissipate from the minds of the jurors any honest claim of right on the part of the prisoner. See Black v. State, 83 Ala. 81, 3 So. 814—refusal of charge (1):

> "The charge requested by defendant, that if the taking was open and notorious, and there was no subsequent attempt to conceal the property, and no denial, but an avowal, of the taking, a strong presumption arises that there was no felonious intent, *which must be repelled by clear and convincing evidence, before a conviction is authorized,* is substantially in the language of the rule as declared in McMullen v. State, 53 Ala. 531, and should have been given. * * *"

(Italics added).

In *Black,* supra, and in Morningstar v. State, 55 Ala, 148, refusal of instructions. But in McMullen v. State, 53 Ala. 531, the tendered instruction invaded the province of the jury. See also Morrisette v. State, 77 Ala. 71.

In Brand v. State, 26 Ala.App. 286, 158 So. 769 overruling a motion for new trial was held erroneous. This case comes nearest to supporting the majority opinion herein. See also Scott v. State, 29 Ala. App. 110, 192 So. 288.

Citing Talbert v. State, 121 Ala. 33, 25 So. 690, Beatty asserts, Alabama Property Offenses, 12 Ala.L.Rev. 253 at 279, that an open taking no longer rebuts the *animus furandi* as a matter of law.

*Talbert,* supra, reaffirmed *McMullen,* supra, Tyson, J., writing:

> "The foregoing considerations show that the taking of goods in the presence of the owner or other persons, otherwise than by robbery, will not raise the presumption, as a matter of law, that a felonious intent did not exist in the mind of the defendant, but that its existence or nonexistence should be submitted to the jury for their determination when the other essentials of the charge of larceny were shown by the evidence, such as the taking and carrying away against the will of the owner, etc. Nor do we mean to be understood as saying that cases cannot arise where the fact of intent is involved. Its existence or nonexistence cannot be affirmed as a matter of law, but, in such cases, the evidence must be clear, and leave no room for any reasonable inference against its existence or nonexistence."

The so-called invoice serves as bill of sale but states that the "Title of Ownership" does not pass to the buyer until the final cash payment is made. No due date of payment was specified. Nothing says time is of the essence. No right of repossession is given. See Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556.

To me this was a classic case for a jury to decide. That the defense failed to ask for other appropriate instructions is no ground for us to act as a court of cassation.

I respectfully dissent.